UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRAVELODGE HOTELS, INC., : | **OPINION** |
| : | |
| Plaintiff, : | Civ. No. 11-2599 (WHW) |
| v. : | |
| : | |
| MERIDIAN GLOBAL INVESTMENTS, : | |
| LP; MERIDIAN PREMIER : | |
| MANAGEMENT, LLC; and EVAN : | |
| JACOBSON, : | |
| : | |
| Defendants. : | |

**Walls, Senior District Judge**

Plaintiff Travelodge Hotels, Inc. ("THI") moves for final judgment by default against Defendants Meridian Global Investments, LP ("Meridian Global"), Meridian Premier Management, LLC ("Meridian Premier") and Evan Jacobson pursuant to Fed. R. Civ. P. 55(b)(2). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motion is decided without oral argument. THI's motion for default judgment is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

This suit arises from a license agreement originally entered into between THI and SNB Hotels, Ltd. ("SNB") on or about September 5, 2001 for the operation of a 201-room guest lodging facility ("facility") in Texas. Compl. ¶ 18, Ex. A. On or about February 10, 2003, THI and SNB entered into a Satellite Connectivity Services Addendum ("the addendum"), which is part of the license agreement. Id. ¶ 30, Ex. C. On or about July 31, 2006, THI and SNB entered into an amendment to the license agreement that modified sections 18.1 and 18.3 of the license agreement. Id. ¶ 19, Ex. C. On March 1, 2007, THI entered into an assignment and assumption agreement with SNB and Meridian Global, wherein Meridian Global assumed and accepted all

rights and obligations of SNB under the license agreement. Id. ¶ 20, Ex. B. At this time Jacobson provided THI with a guaranty of Meridian Global's obligations under the agreement and agreed that upon default that he would immediately make each payment and perform or cause Meridian Global to perform each obligation required under the agreement. Id. ¶¶ 32-34, Ex. A.

Under the terms of the license agreement, Meridian Global was obligated to operate the facility for a period of fifteen years and make periodic payments to THI for royalties, system assessment fees, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, the "recurring fees"). Id. ¶¶ 21-22, Ex. A. Meridian Global further agreed that interest would be payable on any past due amount at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid. Id. ¶ 23, Ex. A. Meridian Global was also required to prepare and submit monthly reports to THI disclosing the amount of gross room revenue earned by Meridian Global at the facility in the preceding months for purposes of establishing the amount of royalties and other recurring fees due to THI as well as prepare and maintain at the facility's accurate financial information for THI to examine, audit, and copy. Id. ¶¶ 24-25, Ex. A.

THI could terminate the license agreement if Meridian Global discontinued operating the facility as a Travelodge guest lodging establishment or lost possession or the right to possession of the facility. Id. ¶ 26, Ex. A. Meridian Global agreed that if the agreement was terminated, it would pay liquidated damages to THI according to a formula in the license agreement. Id. ¶ 27, Ex. C. The agreement also provided that Meridian Global's obligations in the event of a termination included immediately ceasing the use of all Travelodge Marks in association with the operation and use of the facility. Id. ¶ 28, Ex. A. Additionally, the agreement provided that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees,

incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." Id. ¶ 29, Ex. A. Lastly, Meridian Global agreed in the event of a termination it would pay additional liquidated damages to THI in the amount of $1,000 within 10 days of termination. Id. ¶ 31, Ex. C.

On or about June 25, 2009 Meridian Global ceased to operate the facility as a Travelodge facility, unilaterally terminating the lease agreement. Id. ¶ 35. THI wrote to Meridian Global on July 8, 2009 acknowledging the termination and advising Meridian Global to immediately discontinue all indicia of operation, materials and marks identifying the facility as a Travelodge to effectively distinguish its facility from a Travelodge facility within 14 days from receipt of notice. Id. ¶ 36, Ex. D. THI also requested the liquidated damages owed for premature termination and demanded all outstanding recurring fees through the date of termination. Id. THI alleges that despite the termination of the agreement and its request that Meridian Global to de-identify the facility, Meridian Global continued to use the Travelodge Marks through at least February 18, 2011. Id. ¶¶ 39-41, Ex. G.

THI filed a complaint against the Defendants on May 5, 2011, alleging a breach of contract, premature termination and violation of the Lanham Act. Meridian Global, Meridian Premier and Jacobson were personally served on January 16, 2012. ECF No. 10, No. 11, No. 12. Defendants did not appear in this action or answer the complaint and THI requested entry of default against Meridian Premier, Meridian Global and Jacobson, which was entered by the Clerk on February 17, 2012. ECF No. 13.

THI now moves for final judgment by default in the amount of $733,522.05. Fenimore Aff. ¶ 42. This amount is comprised of (1) $89,097.90 for recurring fees owed under the agreement, (2) $45,423.62 for prejudgment interest on the recurring fees, (3) $202,000.00 for

liquidated damages, (4) $100,008.44 for prejudgment interest on the liquidated damages, (5) $288,901.08 for infringement damages, trebled pursuant to the Lanham Act, and (6) $8,091.01 for attorneys' fees and costs. Id.

## STANDARD FOR REVIEW

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. The power to grant default judgment "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted). Because the entry of default prevents a plaintiff's claims from being decided on the merits, "this court does not favor entry of defaults or default judgments." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984). Accordingly, the Third Circuit has clarified that, while "the entry of default judgment is left primarily to the discretion of the district court," this "discretion is not without limits," and cases should be "disposed of on the merits whenever practicable." Hritz, 723 F.2d at 1181 (citations omitted). See also $55,518,05 in U.S. Currency, 728 F.2d at 194-95.

The Third Circuit considers three factors in determining "whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005). The court must, however, make an independent inquiry into "whether the unchallenged facts constitute a legitimate cause of action, since a party in default

does not admit mere conclusions of law." DIRECTV, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kaye Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998). While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing "as long as [the court] ensure[s] that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

## DISCUSSION

### I. Jurisdiction

#### a. Subject Matter Jurisdiction

Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. § 1121 and with respect to certain claims, 28 U.S.C. § 1367. Compl. ¶ 5. THI is disputing Meridian Global used registered trademarks it was not permitted to use. Compl. ¶¶ 10-17, 37-41. See 28 U.S.C. §§ 1331 and 1338. This court has proper subject matter jurisdiction over the trademark claim and supplemental jurisdiction over the remaining claims since they are part of the same case or controversy as the trademark claim. See 28 U.S.C. §1367.

#### b. Personal Jurisdiction

This court possesses personal jurisdiction over Defendants. Proper service of process is required to establish personal jurisdiction over a defendant. Lampe v. Xouth, Inc., 952 F.2d 697, 700-01 (3d Cir. 1991). Summonses for each defendant were returned executed on January 25, 2012. ECF No. 10, ECF No. 11, ECF No. 12. The franchise agreement includes a clause by which Meridian Global and Meridian Premier consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey

and the United States District Court for the District of New Jersey . . . ." to which Jacobson, as guarantor, was personally bound. Compl. ¶¶ 6-8, Ex. A.

## II. Liability

Because a party seeking a default judgment is not entitled to such relief as a matter of right, the court may enter a default judgment "only if the plaintiff's factual allegations establish the right to the requested relief." Nautilus Ins. Co. v. Triple C. Const. Inc., No. 10-2164, 2011 WL 42889, at *4 (D.N.J. Jan. 6, 2011).

### a. Breach of Contract

THI seeks judgment of $733,522.05. Mot. for Final J. by Default ¶ 42. Of this amount, $89,097.90 is for recurring fees owed under the agreement and $202,000.00 for liquidated damages. Id. THI alleges that it is owed these amounts due to a breach of contract. Id. To properly make out a breach of contract claim, THI must allege: (1) a valid contract, (2) breach of that contract, and (3) damages resulting from that breach. Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007). THI has satisfied each of these elements. THI alleges that it "entered into the License Agreement with SNB Hotels, Ltd. for the operation of a 201-room guest lodging facility" which the Defendants were then made liable for by assignment and assumption. Compl. ¶ 18. Second, it alleges that the defendants breached the contract because they have failed to meet their financial and operational obligations in accordance with the license agreement. Id. ¶¶ 64, 69. Third, THI alleges damages relating to these claims because defendants have failed to pay the recurring fees and liquidated damages owed under the agreement. Fenimore Aff. ¶¶ 37-38, 41-42.

### b. Lanham Act

THI brings claims under §§ 32 and 43(a) of the Lanham Act (codified at 15 U.S.C. §§ 1114, 1125(a)). Compl. ¶ 43-47. The elements for claims under these sections are the same where the argument is that the defendant's use of a protected mark is causing confusion as to the affiliation of goods or services. See Freedom Card, Inc. v. JPMorgan Chase & Co., 423 F.3d 463, 469-70 (3d Cir. 2005) (citing A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 202 (3d Cir. 1999)). "To prove trademark infringement, a plaintiff must show that: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin or the goods or services." Id.

THI has satisfied each of these elements. "Registration of a mark under § 2 of the Lanham Act . . . entitles the owner to a presumption that its mark is valid." Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209 (2000). THI has adequately plead ownership of a valid and protectable mark because it alleges that it "has the exclusive right to sublicense the use of the service mark Travelodge and various related trade names, trademarks and service marks (certain of which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof… as well as the distinctive Travelodge" Hotels system. Fenimore Aff. ¶ 4. THI also alleges that "certain of the Travelodge Marks are incontestable pursuant to 15 U.S.C. § 1065" and that the public has been given notice of the registration of the Travelodge Marks pursuant to 15 U.S.C. § 1111. Id. ¶¶ 5-6.

### III. Propriety of Entry of Default Judgment

THI has properly served Defendants with process, the Clerk of the Court has entered default against them, and THI has established legitimate causes of action for breach of contract and violations of the Lanham Act. The Court now determines whether default judgment is

appropriate by evaluating: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." Chamberlain, 210 F.3d at 164.

If a default judgment is not entered, THI will continue to be harmed "because [it] will not be able to seek damages for [its] injuries due to defendant's continuing refusal to" participate in this case. Newman v. Axiom Worldwide, No. 06-5564, 2010 WL 2265227, at *5 (D.N.J. June 2, 2010). Furthermore, the amounts owed on the recurring fees and the liquidated damages are subject to interest. Defendants will owe THI more money the longer it does not receive payment, causing additional harm. See Howard Johnson Intern., Inc. v. Patel, No. 11-918, 2011 WL 2148575, at *4 (D.N.J. May 31, 2011).

Defendants have not filed anything with the Court. Defendants have offered no defense, and the facts asserted in the complaint do not contain any information that could provide the basis for a meritorious defense. The Court assumes that the defendants have no litigable defenses available. Rose Containerline, Inc. v. Omega Shipping Co., No. 10-4345, 2011 WL 1564637, at *3 (D.N.J. Apr. 25, 2011).

The Third Circuit has defined culpable conduct as "conduct that is taken wilfully or in bad faith." Hill v. Williamsport Police Dept., 69 F. App'x 49, 52 (3d Cir. 2003) (quotations omitted). "Reckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard." Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 523 (3d Cir. 2006) (citation omitted). Here, defendants have disregarded all communications from THI. Nor does the record suggest any good faith justification for Defendants' failure to respond. There is no evidence before the Court "that defendants' failure to respond to plaintiff's complaint was caused by anything other than

defendants' own culpability and wilful negligence." Platypus Wear, Inc. v. Bad Boy Club, Inc., No. 08-2662, 2009 WL 2147843, at *5 (D.N.J. July 15, 2009). The Court presumes that Defendants acted culpably because they have "failed to answer, move, or otherwise respond." Stonebridge Bank v. Nita Props., LLC, No. 09-5145, 2011 WL 380759, at *6 (D.N.J. Jan. 31, 2011).

IV. **Damages and Other Relief**

THI requests a default judgment in the amount of $733,522.05. Mot. for Final J. by Default. This amount is comprised of (1) recurring fees in the amount of $89,097.90, (2) liquidated damages in the amount of $202,000.00, (3) prejudgment interest on both recurring fees and liquidated damages in the amounts of $45,423.62 and $100,008.44, (4) infringement damages, trebled pursuant to the Lanham Act, in the amount of $288,901.08 and (5) $8,091.01 for attorneys' fees and costs pursuant to the terms of the license agreement.

a. **Recurring Fees and Liquidated Damages**

The only allegations in a plaintiff's complaint not treated as true upon the entry of a default judgment are those pertaining to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990). Under Rule 55(b)(2), a district court "may conduct such hearing or order such references as it deems necessary and proper" in order "to determine the amount of damages." There are certain limited situations, however, where a district court can enter a final judgment without requiring further evidence of damages. Ramada Worldwide Inc. v. ERS Investments Inc., No. 07-1095, 2008 WL 163640, at *6 (D.N.J. Jan. 16, 2008) (citing KPS Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003)). First, if the damages are for a "sum certain or for a sum which can by computation be made certain," a further evidentiary inquiry is not necessary. Fed. R. Civ. P. 55(b)(1); Comdyne I, 908 F.2d at 1149. A claim for

Case 2:11-cv-02599-WHW-MCA   Document 15   Filed 06/15/12   Page 10 of 12 PageID: 326

damages is not a "sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." Ramada Worldwide Inc., 2008 WL 163640, at *6 (quoting KPS Assocs., 318 F.3d at 19). "Such situations include actions on money judgments, negotiable instruments, or similar situations where the damages sought can be determined without resort to extrinsic proof." Id. (quoting KPS Assocs., 318 F.3d at 19-20 (internal quotations omitted)). Second, claims for liquidated damages also do not require further evidentiary inquiry. Id. (citing KPS Assocs., 318 F.3d at 20). Here, THI's request for recurring fees and liquidated damages owed under the agreement is for a specific sum and will be awarded by the Court. Fenimore Aff. ¶¶ 37-38. The liquidated damages and the recurring fees can be computed by formulas specified in the franchise agreement. Id.

      b. **Prejudgment Interests**

THI also seeks prejudgment interest of $45,423.62 for the recurring fees and $100,008.44 for the liquidated damages. Fenimore Aff. ¶¶ 37-38. Even in the absence of a contractual provision on the issue of prejudgement interest, New Jersey courts have allowed awards of prejudgment interest, in the discretion of the court, to "indemnify the claimant for the loss of what the moneys due him would presumably have earned if the payment had not been delayed." Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 284 (3d Cir. 1995); accord, e.g., County of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006) ("In awarding prejudgment interest, the basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question"). The Court grants prejudgment interest for both the recurring fees as well as liquidated damages given that several New Jersey District Courts have granted prejudgment interest for liquidated damages. See Travelodge Hotels, Inc. v. Onyx Int'l Inc., No. 05-3116 (D.N.J. Feb. 6, 2006); Travelodge Hotels, Inc. v. Colfax Ave. Irrevocable Trust, No. 01-

3586, slip op. at 9-10 (D.N.J. July 14, 2004); Howard Johnson Int'l, Inc. v. Holeyfield, No. 03-418, slip op. at 14-15 (D.N.J. July 12, 2004).

### c. Infringement Damages

As to infringement damages, Section 35 of the Lanham Act allows a victorious plaintiff to recover, inter alia, "any damages sustained by the plaintiff." 15 U.S.C. § 1117(a). Additionally, a court may treble the actual damage award if the infringement is wilful or intentional. Id. Some courts have awarded damages based on the amount of royalties the defendant would have paid during the infringement period under the now-terminated licensing agreement. See A&H Sportswear Co., 166 F.3d at 208-09. Here, in the absence of discovery, THI has no ability to ascertain the amount of Meridian Global's gross revenue during the period of infringement and thereby cannot ascertain what recurring fees would be based on that revenue. THI can offer an estimate to the Court based on the average recurring fees paid by Meridian Global on its reported gross room revenue. THI alleges that the average monthly recurring fees owed by Defendants would have been $5,068.44 and the number of months of infringement was 19 months, resulting in a total of $96,300.36. Id. This number was then tripled because THI alleges that the violation was deliberate and wilful and seeks treble damages under the Lanham Act totalling $288,901.08. Id. See 15 U.S.C. 1117(a). In the absence of better evidence to prove lost royalties, THI's calculations for infringement damages based on average recurring fees incurred by Defendants on their reported gross room revenue are acceptable. THI has also shown that Defendants intentionally infringed the Travelodge Marks, because Defendants continued to use Travelodge Marks despite receiving cease and desist letters from THI. Accordingly, the Court grants THI's request for Lanham Act damages in the amount of $288,901.08.

### d. Attorneys Fees and Costs

Under section 17 of the license agreement, both parties agreed that "the non-prevailing party would pay for the costs and expenses, including reasonable attorneys' fees and expenses, incurred by the prevailing party to enforce the addendum". Fenimore Aff. ¶ 28, Ex. A. Attorneys' fees clauses are enforceable under New Jersey law. See <u>North Bergen Rex Transport, Inc. v. Trailer Leasing Co.</u>, 158 N.J. 561, 569 (1999). Rule 54 of the Federal Rules of Civil Procedure provides that "costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Because THI has submitted supporting documentation, its request for attorneys' fees and costs will be granted. Fenimore Aff. ¶ 28, Ex. A.

## CONCLUSION

THI's motion for default judgment is granted.

s/ William H. Walls
United States Senior District Judge